IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MATTHEW BECKSTRAND, | ) | CIVIL. NO. 11-00597 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION TO |
| | ) | DISMISS |
| vs. | ) | |
| | ) | |
| THOMAS READ; NETTIE SIMMONS; | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING MOTION TO DISMISS

I.   INTRODUCTION.

         Plaintiff Matthew Beckstrand ("Beckstrand") brings suit

under 42 U.S.C. § 1983 against Defendants Thomas Read and Nettie

Simmons (collectively, "Defendants") for constitutional

violations in connection with an alleged miscalculation of his

state-court sentence.  Beckstrand claims that the miscalculation

caused him to spend 73 days in prison for an alleged parole

violation after the date his parole term allegedly should have

ended.

         Defendants now move to dismiss Beckstrand's claims on

the ground that Beckstrand failed to file suit within the

applicable statute of limitations period.  See Defs. Thomas Read

and Nettie Simmons' Mot. to Dismiss (the "Motion"), ECF No. 6.

The court DENIES the Motion.

II.  BACKGROUND.

         Beckstrand alleges that on November 6, 2006, he was

sentenced by Judge Elizabeth Strance of the Circuit Court of the Third Circuit, State of Hawaii, to a maximum of five years in prison in Criminal Case No. 99-248K, with the Hawaii Paroling Authority ("HPA") having the ability to release him on parole earlier.  Compl. ¶ 7, ECF No. 1.  At the time the state court sentenced him, Beckstrand was already serving a federal sentence at a federal penitentiary in Oregon in Criminal Case No. 04-00273 SOM.  Id. ¶ 10.

Beckstrand alleges that Judge Strance ordered the state sentence to run concurrently with the federal sentence imposed by this court.  Id. ¶ 8.  Beckstrand claims that the credit he was to receive against his state sentence for time served under the federal sentence was memorialized in the Stipulation Regarding Pre-Sentence Credits and Order.  Id. ¶¶ 9, 11.  The stipulation is not in the record in this case, and no language from that document has been quoted to this court.

After serving his federal prison sentence, Beckstrand allegedly was transferred to state prison to serve the remainder of his state prison sentence, then released on state parole on March 6, 2008.  Id. ¶¶ 13-14.

Upon his release, Beckstrand allegedly met with his state parole officer, J. Godbout, who informed Beckstrand that he "had him until 2012," which Beckstrand took to mean that the maximum state parole term would end in 2012.  Id. ¶¶ 15-16.

Beckstrand says that he told Godbout that, because the federal sentence had been credited to his state sentence, his state parole should end by October 30, 2009.  Id. ¶¶ 12, 17. Beckstrand claims that he provided Godbout with the stipulation to support his position, but that Godbout said Beckstrand was not entitled to the credit he claimed and that Judge Strance had "broken the law."  Id. ¶ 20.

Beckstrand allegedly then contacted the State of Hawaii's Department of Public Safety ("DPS") and spoke with Simmons, a litigation coordinator responsible for measuring sentences and determining state prisoners' release dates.  Id. ¶¶ 3, 21.  Beckstrand says that he provided Simmons with a copy of the state-court judgment and stipulation, but that Simmons said that DPS would not give him the credit he claimed.  Id. ¶¶ 23, 25.  Beckstrand says he next spoke with Read, the administrator for DPS's Offender Management Service.  Read is allegedly responsible for determining the maximum release dates for state prisoners.  Id. ¶¶ 2, 26-27.  Read also allegedly informed Beckstrand that Judge Strance "broke the law" and that Beckstrand was not entitled to the credit he claimed.  Id. ¶ 28.

Beckstrand alleges that his state parole term should have ended no later than October 30, 2009, and that he complied with all of the terms of his state parole through that date.  Id. ¶¶ 29-30.

In or around January 2010, Godbout reported to HPA that Beckstrand had violated his parole terms by failing to notify Godbout of a change of address in November 2009.  Id. ¶¶ 31-32. Beckstrand alleges that the parole violation occurred after the date the state parole term ended.  Id. ¶ 33.

HPA issued a warrant for Beckstrand's arrest on January 12, 2010.  He was arrested on December 19, 2010, and held in custody.  Id. ¶¶ 34-35.  Beckstrand alleges that he immediately notified prison authorities that he was being held unlawfully. Id. ¶ 36.

At the initial hearing on Beckstrand's parole violation on February 2, 2011, Beckstrand was represented by Taryn Tomasa of the State of Hawaii's Office of the Public Defender.  Id. ¶¶ 37-38.  After that hearing was continued, Tomasa allegedly informed Max Otani at HPA on numerous occasions that Beckstrand was being held unlawfully, because by the terms of the state judgment and stipulation, the state sentence had ended before the alleged parole violation.  Id. ¶ 40.  HPA and DPS did not release Beckstrand from custody.  Id. ¶ 42.

Beckstrand alleges that, at the continued HPA hearing on March 2, 2011, Tomasa argued that Beckstrand was being held unlawfully and represented that she was prepared to file a motion in state court for Beckstrand's release.  Id. ¶ 44.  According to Beckstrand, HPA ordered his release without explanation at the

4

conclusion of the hearing.  Id. ¶ 45.  Beckstrand alleges that he was unlawfully incarcerated for 73 days (from December 19, 2010, until March 2, 2011).  Id. ¶ 46.

In his Complaint, filed on September 30, 2011, Beckstrand alleges that Simmons and Read violated his constitutional rights under 42 U.S.C. § 1983.  Beckstrand asserts a violation of the Eighth Amendment, a denial of due process in violation of the Fourteenth Amendment, and an unreasonable search and seizure in violation of the Fourth Amendment.

III. STANDARD.

Under Rule 12(b)(6), a court is generally limited to reviewing the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police

Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.
Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.
1984)).  A motion to dismiss may also be granted if an
affirmative defense or other bar to relief is apparent from the
face of the complaint, such as absolute immunity or the statute
of limitations.  2A J. Moore, W. Taggart & J. Wicker, Moore's
Federal Practice, 12.07 at 12-68 to 12-69 (2d ed. 1991 & Supp.
1191-92) (citing Imbler v. Pachtman, 424 U.S. 409 (1976)).

        To survive a Rule 12(b)(6) motion to dismiss, factual
allegations must be enough to raise a right to relief above the
speculative level, on the assumption that all the allegations in
the complaint are true even if doubtful in fact.  Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 555 (2007).  Accord Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009) (Rule 8 "does not require 'detailed
factual allegations,' but it demands more than an unadorned,
the-defendant-unlawfully-harmed-me accusation").  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, a plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  Twombly, 550
U.S. at 555 (internal citations omitted).  The complaint must
"state a claim to relief that is plausible on its face."  Id. at
570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct

alleged." Iqbal, 129 S. Ct. at 1949.

IV.   ANALYSIS.

   A.   State Law Dictates A Two-Year Statute Of Limitations,
        But The Accrual Of A Claim Is Governed By Federal Law.

   Beckstrand alleges that Defendants miscalculated his

state sentence.   Beckstrand sues under 42 U.S.C. § 1983, which

provides:

>       Every person who, under color of any statute,
>       ordinance, regulation, custom, or usage, of
>       any State or Territory or the District of
>       Columbia, subjects, or causes to be
>       subjected, any citizen of the United States
>       or other person within the jurisdiction
>       thereof to the deprivation of any rights,
>       privileges, or immunities secured by the
>       Constitution and laws, shall be liable to the
>       party injured in an action at law, suit in
>       equity, or other proper proceeding for
>       redress . . . .

   Section 1983 therefore imposes two essential proof

requirements upon a claimant: (1) that a person acting under

color of state law committed the conduct at issue, and (2) that

the conduct deprived the claimant of some right, privilege or

immunity protected by the Constitution or laws of the United

States.   Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).

   The statute of limitations period for § 1983 actions is

"a State's personal injury statute of limitations." Owens v.

Okure, 488 U.S. 235, 240-41 (1989).   See Harvey v. Waldron, 210

7

F.3d 1008, 1013 (9th Cir. 2000) ("The length of the limitations
period for § 1983 actions is governed by state law"); Cabrera v.
City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998)
("State law determines the statute of limitations for § 1983
suits").  The statute of limitations applicable to § 1983 actions
in Hawaii is section 657-7 of the Hawaii Revised Statutes, the
two-year "general personal injury" provision.  Allen v. Iranon,
99 F. Supp. 2d 1216, 1238 (D. Haw. 1999) ("In Hawaii, the statute
of limitations for actions under Section 1983 is two years from
the date of the violation"); Pele Defense Fund v. Paty, 73 Haw.
578, 595, 837 P.2d 1247, 1259 (1992) ("We hold that the two-year
statute of limitations set forth in HRS § 657-7 governs § 1983
actions").

        While state law governs the applicable statute of
limitations, federal law governs when a cause of action begins to
accrue.  Harvey, 210 F.3d at 1013; Cabrera, 159 F.3d at 379.
Beckstrand filed his Complaint on September 30, 2011.  To be
timely under Hawaii law, his claims against Defendants could not
have accrued before September 30, 2009.

        B.    The Court Cannot Conclude, Based On The Present Record,
              That Beckstrand's Claims Against Defendants Are Barred
              By The Statute Of Limitations.

        This court is unable to determine, based on the present
record, when Beckstrand's claims accrued.  Specifically, the
court cannot say that Read's and Simmons's alleged pronouncements

to Beckstrand in 2008 were "operative decisions" that triggered the running of the statute of limitations on Beckstrand's claims.

Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis for the claim. Cabrera, 159 F.3d at 379. There is no requirement that a plaintiff know that he has a legally actionable claim. United States v. Kubrick, 444 U.S. 111, 123 (1979).

In moving to dismiss, Defendants rely almost exclusively on RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045 (9th Cir. 2002). In that case, the Ninth Circuit considered when the statute of limitations began to run on a § 1983 constitutional challenge to a city's public nuisance ordinance. RK Ventures ran a nightclub. In October 1994, the City of Seattle notified RK Ventures that it was going to initiate an administrative hearing on whether the nightclub violated a public nuisance ordinance. The hearing began on November 14, 1994, and was dismissed as moot in December 1994 after the nightclub owners sold the club. The nightclub owners filed suit on November 14, 1997. A three-year statute of limitations applied.

The Ninth Circuit held that the limitations period ran from the city's decision to initiate nuisance abatement proceedings, rather than from the beginning of the nuisance abatement hearing or the decision rendered at the hearing. The

9

court stated that, "in determining when an act occurs for statute of limitations purposes, we look at when the 'operative decision' occurred, . . . and separate from the operative decisions those inevitable consequences that are not separately actionable." <u>Id.</u> at 1058.

Regarding the abatement hearings, the Ninth Circuit held that "[t]he City's decision to institute formal abatement hearings, and its notice to appellants of that decision, was the 'operative decision' for the purposes of triggering the 1983 statute of limitations.  The actual beginning of the abatement hearing . . . was simply the effect of that decision and was not a separately unconstitutional act." <u>Id.</u>  Running the limitations period from the date the decision was made and announced rendered RK Ventures' claims based on the nuisance abatement proceeding untimely.  The date the proceeding started was not the proper reference date for limitations purposes.  Instead of being the "operative decision," the prosecution of the action was the "inevitable consequence of the City's earlier initiation of the abatement proceeding." <u>Id.</u>  The Ninth Circuit stressed that the "operative decision" had to be "final and official," rather than preliminary. <u>Id.</u> at 1061. <u>See also</u> <u>Ford v. Washington</u>, 411 Fed. Appx. 968, 968 (9th Cir. 2011) (holding that the statute of limitations begins to run upon the plaintiff's designation as a sex offender, not when the state defendant refused to remove the

10

designation); <u>Knox v. Davis</u>, 260 F.3d 1009, 1013 (9th Cir. 2001) (attorney's § 1983 cause of action arose when she was informed that she was denied access to prison, and actual denial of entry to prison was not a continuing violation because the "mere continuing impact from past violations is not actionable").

Based on <u>RK Ventures</u>, Defendants argue that Beckstrand's claims against them accrued in the fall of 2008, when, according to Beckstrand, they informed Beckstrand that Judge Strance "broke the law" regarding his sentence.  Beckstrand admits that he knew how Defendants were calculating his parole term when he spoke to Godbout, Simmons, and Read in 2008.  Compl. ¶¶ 22-23, ECF No. 1.  Although the Complaint does not give specific dates on which Beckstrand spoke with Read and Simmons, he alleges that he faxed Simmons a copy of the judgment and stipulation on October 14, 2008.  <u>Id.</u> ¶¶ 22-23.  After Beckstrand spoke to Simmons, he was allegedly referred to Read, who allegedly also told Beckstrand that he was not entitled to federal credit against his state parole term.  <u>Id.</u> ¶¶ 26-28. Thus, Beckstrand's own allegations indicate that he communicated with Read and Simmons in the fall of 2008.

Beckstrand argues that the statute of limitations began to run when he was arrested in December 2010 for the alleged parole violation.  <u>See</u> Mem. in Opp'n to Mot. to Dismiss at 7-8, ECF No. 17.  Beckstrand says that "accrual occurs when the

11

plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. at 7 (quoting Wallace v. Kato, 549 U.S. 384, 387 (2007)).  Beckstrand additionally argues briefly that his claim could not have accrued before October 30, 2009, because his parole status until then was in accordance with what Judge Strance had ordered.

As the Ninth Circuit said in RK Ventures, "we must determine whether appellants have alleged 'discrete acts' that would violate the Constitution that occurred within the limitations period." RK Ventures, Inc., 307 F.3d at 1058 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).  On the present record, Defendants fail to establish that any operative decision occurred outside the statute of limitations period.  The Complaint does not suggest that Defendants' alleged 2008 statements were "final and official" decisions or that the 2010 parole revocation proceeding or Beckstrand's arrest were inevitable consequences of the alleged 2008 statements. Beckstrand knew how Defendants were calculating his parole term as of 2008.  Compl.  ¶¶ 21-28, ECF No. 1.  However, it does not follow that the 2010 revocation proceeding or Beckstrand's arrest had anything to do with Defendants' decisions.  There is no allegation that Godbout's decision to apply for the arrest warrant in 2010 was controlled by Defendants' 2008 calculation. Nothing in the record indicates that Godbout or the HPA answered

12

to Read or Simmons.

At the hearing on the present motion, Defendants conceded that it would be wiser to conduct discovery and, if warranted, revisit this issue on a fuller record.  The court now DENIES the Motion.  As Defendants rely almost solely on <u>RK Ventures</u>, it was incumbent on them to show that <u>RK Ventures</u> requires dismissal of Beckstrand's claims as untimely.  Yet the record does not establish that Defendants' actions were "operative decisions," much less "final and official." Specifically, Defendants fail to establish that their alleged 2008 statements were decisions at all (as opposed to, for example, opinions that did not control HPA or Godbout).  Nor do Defendants show that, given the alleged 2008 statements, it was "inevitable" that Beckstrand would continue to be required to comply with parole conditions after October 2009.

While the record is devoid of facts or law supporting Beckstrand's argument that he is entitled to equitable tolling, the equitable tolling argument is simply irrelevant until Defendants establish that Beckstrand's claims are untimely.

//
//
//
//
//

13

V.    <u>CONCLUSION.</u>

       The court DENIES the Motion given Defendants' failure to show that applicable law or relevant facts render Beckstrand's claims untimely.

       IT IS SO ORDERED.

       DATED: Honolulu, Hawaii, March 29, 2012.



     <u>/s/ Susan Oki Mollway</u>
Susan Oki Mollway
Chief United States District Judge

<u>Beckstrand v. Read et al.</u>, Civ. No. 11-00597 SOM/BMK; Order Denying Motion to Dismiss.

14