IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MATTHEW BECKSTRAND, | ) | CIVIL. NO. 11-00597 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART, |
| | ) | DENYING IN PART DEFENDANTS |
| vs. | ) | THOMAS READ AND NETTIE |
| | ) | SIMMONS'S MOTION FOR SUMMARY |
| THOMAS READ; NETTIE SIMMONS; | ) | JUDGMENT |
| DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS THOMAS READ AND NETTIE SIMMONS'S MOTION FOR SUMMARY JUDGMENT**

I.      INTRODUCTION.

        Plaintiff Matthew Beckstrand brings suit under 42 U.S.C. § 1983 against Defendants Thomas Read and Nettie Simmons (collectively, "Defendants") for constitutional violations in connection with an alleged miscalculation of his state-court sentence.  Beckstrand claims that the miscalculation caused him to spend seventy-three days in prison for an alleged parole violation that occurred after the date he says his parole term should have ended.

        Defendants now move for summary judgment on all counts on the grounds that (1) Defendants have qualified immunity with respect to all claims because they were allegedly following the law governing the calculation of his sentence, and (2) Beckstrand's claims are barred by the statute of limitations.

See Defs. Thomas Read and Nettie Simmons' Mot. for Summ. J., ECF No. 35 ("Motion"). The court grants the Motion in part on limitations grounds, leaving the Fourth Amendment claim for further judgment.

II.     **BACKGROUND.**

On November 6, 2006, Beckstrand was sentenced by Judge Elizabeth Strance of the Circuit Court of the Third Circuit, State of Hawaii, to a five-year indeterminate term for second-degree burglary in Criminal Case No. 99-248K. Judgment for CR. No. 99-248K ("Judgment"), attached as Exhibit "A" to Pl. Separate Concise Statement of Facts, ECF No. 40 ("Pl. CSOF").

In the state system, a five-year "indeterminate" sentence sets five years as the maximum prison term. The Hawaii Paroling Authority may order an individual released after less than five years. In that event, the Hawaii Paroling Authority may require the individual to obey parole conditions for the remainder of the five-year period. Hawaii v. Kamana`o, 118 Haw. 210, 219, 188 P.3d 724, 733 (2008); Haw. Rev. Stat. §§ 706-669, 706-670 (2007).

At the time he was sentenced in that state case, Beckstrand was already serving his prison sentence in a federal bank robbery case, as ordered by this court in Criminal Case No. 04-00273 SOM. Defs. Thomas Read and Nettie Simmons' Concise

2

Statement of Material Facts in of Supp. Mot. for Summ. J., ECF No. 36 ("Defs. CSOF") 2 ¶ 2; Pl. CSOF ¶ 25. The Judgment entered by Judge Strance provided, "This sentence shall run concurrently with the sentence imposed in" the federal bank robbery case. Judge Strance subsequently entered a Stipulation Regarding Pre-Sentence Credits and Order ("Stipulated Order"), stating that Beckstrand was to "receive credit from October 31, 2004," toward his state sentence. Stipulated Order, attached as Exhibit "B" to Pl. CSOF.

After serving his federal prison term, Beckstrand was transferred to state prison to complete his state incarceration. Compl. ¶ 13, ECF No. 1 ("Compl.").[1] He was not required to spend five years in prison on his state sentence. Instead, he was released on state parole on March 6, 2008. Defs. CSOF ¶ 4; Pl. CSOF ¶ 4; Order of Parole, attached as Exhibit "A" to Defs. Thomas Read and Nettie Simmons' First Req. Admiss. to Pl. Matthew Beckstrand, attached as Exhibit "E" to Defs. CSOF ("Parole Order").

---

[1] Many of the facts on which Beckstrand relies are not before the court in the form of admissible evidence. Instead, Beckstrand cites his Complaint as if it is a sworn statement, instead of merely a set of allegations. Unless directly contested by Defendants, however, this court considers even assertions not made under penalty of perjury if it appears to the court that Beckstrand could present the material in issue in admissible form at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

Shortly before he was released from state custody, Beckstrand signed his Parole Order, which stated that his parole term would expire on October 1, 2011. Parole Order; Defs. CSOF ¶ 20; Pl. CSOF ¶ 20. This expiration date is at the heart of the present dispute. After his release, Beckstrand's state parole officer informed him that he "had him until 2012," and that Beckstrand was not entitled to credit for his federal sentence. Defs. CSOF ¶ 5; Pl. CSOF ¶ 5. Beckstrand contacted the State of Hawaii's Department of Public Safety ("DPS") and spoke with Simmons, a legal assistant in the department, about his parole expiration date. Defs. CSOF ¶¶ 6, 10; Pl. CSOF ¶¶ 6, 10. On or around October 14, 2008, Beckstrand allegedly provided Simmons with a copy of the Judgment and Stipulated Order in an apparent attempt to obtain a more favorable determination of his parole expiration date. Pl. CSOF ¶¶ 30-34.

Simmons had audited Beckstrand's file in July 2008 to verify his presentence credit and release date of September 30, 2011. Defs. CSOF ¶¶ 11-12; Pl. CSOF ¶¶ 11-12. The file was initially prepared by DPS staff member Raynette Ruiz in August 2007. Defs. Thomas Read and Nettie Simmons' Reply Mem. in Supp. Mot. Summ. J., ECF No. 41 ("Defs. Reply Mem."). After Beckstrand's inquiry, Simmons allegedly informed Beckstrand over the telephone that, by law, Beckstrand was not entitled to

4

credit against his state sentence for time served on his federal sentence. Defs. CSOF ¶ 13; Pl. CSOF ¶ 13.

Beckstrand asked to speak with Simmons's supervisor, Defendant Read, DPS's Offender Management Administrator. Defs. CSOF ¶ 7; Pl. CSOF ¶ 7. Read informed Beckstrand by telephone that, after meeting with Simmons and discussing Beckstrand's sentence, he concurred with his staff's computation of Beckstrand's parole expiration date, and that Beckstrand was not entitled to the credit he claimed. Defs. CSOF ¶¶ 7, 15; Pl. CSOF ¶¶ 7, 15.

Beckstrand alleges that his state parole term should have ended no later than October 30, 2009,[2] five years from the date on which the stipulated credit began. He says he complied with all of the terms of his state parole through that date. Pl. Mem. Opp'n to Defs. Mot. Summ. J., at 11, ECF No. 39 ("Pl. Mem. Opp'n").

In or around January 2010, Beckstrand's parole officer reported to the Hawaii Paroling Authority that Beckstrand had violated his parole by failing to notify the parole officer of a

---

[2] Beckstrand's Memorandum in Opposition states that he "sincerely believed that he was entitled to rely on the State Sentence handed down by the Hawaii Circuit Court which *ordered* that Plaintiff receive such credit." Pl. Mem. Opp'n, at 11. Beckstrand, however, does not claim to have actually relied on the Judgment or Stipulated Order.

change of address in November 2009. Defs. CSOF ¶ 8; Pl. Mem. Opp'n, at 4. Beckstrand alleges that the parole violation occurred after the date the state parole term ended. Compl. ¶ 33.

The Hawaii Paroling Authority issued a warrant for Beckstrand's arrest on January 12, 2010. Defs. Reply Mem., at 4. He was arrested eleven months later, on December 19, 2010, and returned to state custody. Pl. Mem. Opp'n, at 4. Beckstrand alleges that he immediately notified prison authorities that he was being held unlawfully. Compl. ¶ 36.

At the initial hearing on Beckstrand's parole violation on February 2, 2011, Beckstrand was represented by Taryn Tomasa of the State of Hawaii's Office of the Public Defender. Id. ¶¶ 37-38. After that hearing was continued, Tomasa allegedly informed Max Otani, then-Acting Parole Board Chairman at the Hawaii Paroling Authority, on numerous occasions that Beckstrand was being held unlawfully, because by the terms of the state Judgment and Stipulated Order, the state sentence had ended before the alleged parole violation. Id. ¶ 40. Beckstrand continued to be held in custody. Id. ¶ 42. Thereafter, at the continued parole hearing on March 2, 2011, Tomasa allegedly argued that Beckstrand was being held unlawfully and represented that she was prepared to file a

6

motion in state court seeking Beckstrand's release.  Id. ¶ 44.

According to Beckstrand, the Hawaii Paroling Authority then

ordered his release without explanation.  Id. ¶ 45.  Beckstrand

alleges that he was unlawfully incarcerated for 73 days (from

December 19, 2010, until March 2, 2011).  Id. ¶ 46.

In his Complaint, filed on September 30, 2011,

Beckstrand alleges that Simmons and Read violated his

constitutional rights under 42 U.S.C. § 1983.  Beckstrand

asserts a violation of the Eighth Amendment, a denial of due

process in violation of the Fourteenth Amendment, and an

unreasonable search and seizure in violation of the Fourth

Amendment.  Compl. ¶¶ 47-63.

**III.    STANDARD.**

Summary judgment shall be granted when "the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc.,

198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support

their position that a material fact is or is not genuinely

disputed by either "citing to particular parts of materials in

the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motion only),

admissions, interrogatory answers, or other materials"; or

"showing that the materials cited do not establish the absence

or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed.

R. Civ. P. 56(c). One of the principal purposes of summary

judgment is to identify and dispose of factually unsupported

claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317,

323-24 (1986).

Summary judgment must be granted against a party that

fails to demonstrate facts to establish what will be an

essential element at trial. See id. at 323. A moving party

without the ultimate burden of persuasion at trial--usually, but

not always, the defendant--has both the initial burden of

production and the ultimate burden of persuasion on a motion for

summary judgment. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to

identify for the court those "portions of the materials on file

that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing

Celotex Corp., 477 U.S. at 323). "When the moving party has

carried its burden under Rule 56(c), its opponent must do more

8

than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv.,

9

<u>Inc.</u>, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>Id.</u> When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>Id.</u>

**IV.      ANALYSIS.**

Beckstrand alleges that Defendants miscalculated his state sentence, which led to his unlawful reincarceration. Beckstrand sues under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . .

Section 1983 therefore imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege or

10

immunity protected by the Constitution or laws of the United States.  Leer v. Murphy, 844 F.2d 628, 632–33 (9th Cir. 1988).

Defendants argue, inter alia, that (1) they are entitled to qualified immunity with respect to Beckstrand's claims, and (2) the claims are barred under the applicable two-year statute of limitations for § 1983 actions.

## A.   Defendants Do Not Establish That They Are Entitled to Qualified Immunity.

Qualified immunity shields government officials from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The doctrine will not protect the "plainly incompetent" or those "who knowingly violate the law."  Preschooler II v. Clark Cnty. Sch. Bd. of Trustees, 479 F.3d 1175, 1180 (9th Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224 (1991)).  Qualified immunity balances the need to hold government officials accountable for irresponsibly exercising their authority, with the need to protect officials from harassment, distraction, and liability when reasonably performing their duties.  Pearson, 555 U.S. at 231.

The Supreme Court has set forth a two-pronged test for determining whether government officials are entitled to

qualified immunity.  See Saucier v. Katz, 533 U.S. 201 (2001).

In one prong, the court determines "whether, taken in the light

most favorable to the party asserting the injury, that party has

established a violation of a federal right." Preschooler II,

479 F.3d 1175, 1180 (9th Cir. 2007) (citing Saucier, 533 U.S. at

201).  In the other prong, the court determines whether this

right was clearly established at the time of the defendant's

alleged misconduct.  Saucier, 533 U.S. at 201.  The "clearly

established" test is satisfied when unlawfulness is apparent in

light of preexisting law.  Preschooler II, 479 F.3d at 1180

(citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)).

A right is "clearly established" for purposes of

qualified immunity if "the contours of the right [are]

sufficiently clear that a reasonable official would understand

that what he is doing violates that right." Wilson v. Layne,

526 U.S. 603, 614-15 (1999) (quoting Anderson v. Creighton, 483

U.S. 635, 640 (1987)).  The plaintiff bears the burden of

showing that the right he or she claims was violated was a

clearly established right.  Sorrels v. McKee, 290 F.3d 965, 969

(9th Cir. 2002).  If the plaintiff meets this burden, the burden

shifts to the defendant to demonstrate that the defendant

reasonably believed the alleged conduct was lawful.  Trevino v.

Gates, 99 F.3d 911, 916-17 (9th Cir. 1996).

12

The Ninth Circuit has stated that "an officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity." Grossman v. City of Portland, 33 F.3d 1200, 1209-10 (9th Cir. 1994). Whether an act is a violation of a federal right and whether the right was clearly established at the time of the violation are pure legal questions for the court. See Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003).

This court has the discretion to evaluate the two prongs in any order. Pearson, 555 U.S. at 236 ("The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) ("we adopt Pearson's more flexible approach and proceed directly to an analysis of Saucier's second prong.").

This court concludes that Beckstrand had a right to be deemed to have completed his sentence when the Judgment and Stipulated Order provided he had done so. Taken in the light most favorable to Beckstrand, the record suggests that Beckstrand had a right to have his parole end in October 2009. The court further concludes that the right to have a criminal

sentence end as of the maximum date set by the court was clearly established well before October 2009.

With respect to the issue of when Beckstrand had a right to have his sentence end, the court relies on the very concept of a judgment. Unless vacated or reversed, a judgment represents the final determination in a case. If prison officials could second-guess judgments and detain or release individuals as they deemed appropriate, judgments would be meaningless. The prison officials could then trump the entire judicial system, pronouncing not only trial judges, but even appellate judges, to have been mistaken and therefore not entitled to have their rulings enforced. The result would be a shadowy, unreviewable system that would hold the power to release prisoners earlier than courts had ordered, or to detain them beyond what courts ordered.

While the present case turns on the expiration of a parole period, if DPS has the authority to override a judge with respect to the parole period, DPS presumably claims the right to override a judge with respect to a custody period. Nothing in any law vests in the DPS the power to override a judge.

The Supreme Court established, in Hill v. United States ex rel. Wampler, 298 U.S. 460, 464 (1936), that the sentence ordered by a court may be altered only by an amended

14

judgment.  In Wampler, the United States District Court for the

District of Maryland imposed a sentence on Wampler, orally

ordering a prison term and a fine.  Id. at 462.  On the same

day, the court clerk issued a commitment of imprisonment that

included not only the prison term and fine, but also included a

provision that Wampler remain imprisoned until the fine was

paid.  Id.  Wampler petitioned the court to strike this

provision, arguing that the court clerk had inserted into the

commitment a provision that the judge had not made part of his

sentence.  Id.

The prison warden in Wampler contended that there was

a practice in the District of Maryland to include this provision

in the commitment, even when not expressly stated by the court.

Id. at 465.  The warden argued that this practice should be

given the force of law.  Id.  The Supreme Court disagreed,

noting that the practice was "not published; . . . not reduced

to writing; . . . [and] lacking in the formal safeguards that

protect against mistake and perhaps against oppression."  Id.

The Court stated,

> The only sentence known to the law is the
> sentence or judgment entered upon the
> records of the court.  If the entry is
> inaccurate, there is remedy by motion to
> correct it to the end that it may speak the
> truth. . . . Until corrected in a direct
> proceeding, it says what it was meant to

> say, and this by an irrebuttable
> presumption.

Id. at 464 (internal citations omitted).  Thus, the Supreme

Court held that the provision inserted into the commitment by

the court clerk was void.  Id. at 465.

Similarly, Judge Strance ordered that Beckstrand

receive credit from October 2004 against his indeterminate five-

year state sentence.  The record does not indicate that Judge

Strance issued any order invalidating this credit.  Defendants

effectively invalidated the court-ordered credit when they

decided that Beckstrand was not entitled to such credit and

calculated the date his sentence expired as being beyond October

2009.  Like the clerk's amendment in Wampler, Defendants'

calculation of Beckstrand's sentence was invalid.  Viewed in the

light most favorable to Beckstrand, the evidence indicates that

the court ordered Beckstrand's sentence of combined custody and

parole to end no later than October 2009.  His right to rely on

the Judgment and Stipulated Order was clearly established even

before Beckstrand allegedly furnished such documents to

Defendants in 2008.

Having determined that Beckstrand has met his burden

of showing a clearly established right, this court turns to the

question of whether Defendants demonstrate that they reasonably

believed their alleged conduct was lawful.  In seeking summary

judgment, Defendants contend that they were relying on

applicable law in overriding Judge Strance's decision to

sentence Beckstrand to an indeterminate five years of

incarceration and parole combined, with credit for time served

beginning on October 31, 2004, while he was apparently in

federal custody.  In particular, Defendants point to three

sources of authority for their action.

        First, they point to section 706-671 of Hawaii Revised

Statutes.  Defendants say that, under this statute, "an inmate

receives credit for time served (1) in a State or local

institution prior to sentencing (2) for the crime for which the

sentence is imposed."  Motion, at 11.  Judge Strance gave

Beckstrand credit for time served on his federal sentence on a

different crime.  The court cannot help noting that Defendants

overstate the terms of section 706-671, as it read in 2008.

That statute addresses how credit applies "[w]hen a defendant

who is sentenced to imprisonment has previously been detained in

any State or local correctional or other institution."  In 2008,

the statute did not expressly forbid credit for time spent in a

federal facility.[3]  Thus, in 2008, Defendants could not be said

_____

        [3] Section 706-671 of Hawaii Revised Statutes now states
that, "when a defendant is convicted for a crime committed while

17

to have been relying on the express terms of the statute.
Before 2012, it was case law, rather than the express statutory
language, that limited the credits.

That case law is the second authority Defendants point
to: the Hawaii Supreme Court's decision in Hawaii v. March, 94
Haw. 250, 11 P.3d 1094 (2000).  That case recognized that
section 706-761(1) was "silent as to the propriety of obtaining
credit for time served in connection with an unrelated criminal
offense."  Id. at 254, 11 P.3d at 1098.  The court held that a
sentence crediting a defendant with time served for an unrelated
offense was illegal because it was not authorized under chapter
706 of Hawaii Revised Statutes.  Id. at 255, 11 P.3d at 1099.

What is notable is that March preceded the Judgment
and Stipulated Order entered by Judge Strance.  Judge Strance
presumably did not consider either the Judgment or the
Stipulated Order to violate governing precedent.  Beckstrand's
criminal defense attorney and the prosecutor similarly do not

---

serving a sentence of imprisonment on a separate unrelated
felony conviction, credit for time being served for the term of
imprisonment imposed on the defendant for the separate unrelated
felony conviction shall not be deducted from the term of
imprisonment imposed on the defendant for the subsequent
conviction."  HAW. REV. STAT. § 706-671(3) (2012).  This
provision, however, was enacted in 2012, after Defendants had
calculated and/or confirmed Beckstrand's release date in 2008,
and after Defendants had allegedly held Beckstrand in custody on
the 2010 parole violation.  Act 50, 2012 Haw. Sess. Laws.

appear to have seen any problem with the Stipulated Order giving Beckstrand credit for time served on a federal sentence. Defendants focus on what they say was the error by Judge Strance and the attorneys who were involved with the state sentencing proceedings, but Defendants do not establish that they reasonably believed they were vested with the power to correct that alleged error on their own.

It is, of course, Defendants who have the burden of establishing the reasonableness of their purported belief. The relevant belief for which Defendants bear this burden is not the belief that an error was committed by Judge Strance. Rather, Defendants must establish the reasonableness of their belief that DPS employees were empowered to correct a judge's purported error. Defendants make no showing of reasonableness with respect to any belief that the DPS was authorized to undo the Judgment and Stipulated Order and impose what DPS employees deemed to be a correct application of <u>March</u> on Beckstrand. Defendants overrode the judge, prosecution, and defense all at once, without establishing why they thought it reasonable for them to correct a perceived error.

Third, Defendants point to DPS's policy for calculating sentences. <u>See</u> Dep't of Pub. Safety Policy re: Sentence Computation, attached as Exhibit "C" to Exhibit "3" of

Defs. CSOF 6.  Defendants say their calculation complied with that policy.  Decl. of Thomas Read, attached as Exhibit "3" to Defs. CSOF.  But nothing in that policy, even assuming it could override a court order, invited DPS officials to nullify a court-imposed sentence.

By assuming the right to ignore what they viewed as Judge Strance's erroneous sentence, DPS accomplished in 2008 what the prosecution could never have accomplished in 2008. That is, the appeal time having run, the prosecutor could not, in 2008, have appealed Judge Strance's rulings and asked an appellate court to declare them illegal or to nullify the prosecutor's own stipulation.  Defendants fail to establish the reasonableness of any belief that they had the authority to "reverse" Judge Strance long after the prosecution had declined to take an appeal.

Beckstrand clearly had a right to be free of decisions by prison officials to correct allegedly erroneous judicial decisions.  The judicial system is designed to provide for judicial review of orders, and DPS officials who believe they may take it upon themselves to conduct such review on their own cannot have the benefit of qualified immunity without showing the reasonableness of such a belief.  Defendants make no such showing.

On the present record, Defendants are not entitled to qualified immunity.

Beckstrand notes that DPS policy states that, "in a situation where the court order specifically conflicts or contradicts with [sic] a statute, the staff assigned to the computation should contact the court for clarification." Dep't of Pub. Safety Policy re: Sentence Computation, attached as Exhibit "E" to Pl. CSOF 16. Even though the effective date of this policy is June 9, 2009, after Defendants had verified Beckstrand's sentence in 2008, Defendants do not suggest that, before that date, there was any bar to their seeking such clarification. In any event, Defendants do not satisfy their burden with respect to qualified immunity.

**B.    The Two-Year Statute of Limitations Bars Beckstrand's Eighth and Fourteenth Amendment Violation Claims, But Not His Fourth Amendment Claim.**

The statute of limitations period for § 1983 actions is "a State's personal injury statute of limitations." Owens v. Okure, 488 U.S. 235, 240-41 (1989). See Harvey v. Waldron, 210 F.3d 1008, 1013 (9th Cir. 2000) ("The length of the limitations period for § 1983 actions is governed by state law"); Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998) ("State law determines the statute of limitations for § 1983 suits"). The statute of limitations applicable to § 1983

actions in Hawaii is section 657-7 of the Hawaii Revised
Statutes, the two-year "general personal injury" provision.
Allen v. Iranon, 99 F. Supp. 2d 1216, 1238 (D. Haw. 1999) ("In
Hawaii, the statute of limitations for actions under Section
1983 is two years from the date of the violation."); Pele
Defense Fund v. Paty, 73 Haw. 578, 595, 837 P.2d 1247, 1259
(1992) ("We hold that the two-year statute of limitations set
forth in HRS § 657-7 governs § 1983 actions."). The parties
agree that the two-year statute of limitations applies. See
Motion, at 6; Pl. Mem. Opp'n, at 5-6.

Although state law governs the applicable statute of
limitations, federal law governs when a cause of action begins
to accrue. Harvey, 210 F.3d at 1013; Cabrera, 159 F.3d at 379.
Beckstrand filed his complaint on September 30, 2011. To be
timely under Hawaii law, his claims against Defendants must have
accrued on or after September 30, 2009.

Defendants argue that Beckstrand's § 1983 claims are
barred under the two-year statute of limitations because
Beckstrand's cause of action accrued in 2008, when Beckstrand
was repeatedly informed that his state sentence expired on
October 1, 2011. First, Simmons informed Beckstrand by
telephone that DPS would not apply the credit Beckstrand claimed
to his sentence, even though Beckstrand's Judgment and the

Stipulated Order appeared to provide for that credit. Defs. CSOF ¶ 13; Pl. CSOF ¶ 13. Second, Read concurred with Simmons that Beckstrand's claimed credit was inapplicable, and relayed this concurrence to Beckstrand by telephone. Defs. CSOF ¶ 15; Pl. CSOF ¶ 13. Third, Beckstrand signed the Order of Parole, acknowledging that his Term of Parole would expire on October 1, 2011. Defs. CSOF ¶ 20; Pl. CSOF ¶ 20.

Defendants rely on RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045 (9th Cir. 2002), in which the Ninth Circuit stated, "in determining when an act occurs for statute of limitations purposes we look at when the 'operative decision' occurred, . . . and separate from the operative decisions those inevitable consequences that are not separately actionable." Id. at 1058. Defendants argue that, because the confirmation of Beckstrand's parole past 2009 (and, likely, his eventual reincarceration) was an "inevitable consequence" of their 2008 communications or "operative decisions," Beckstrand's cause of action against Defendants accrued in 2008. Thus, Defendants allege, Beckstrand's complaint is untimely.

Beckstrand argues that his claims are not barred by the two-year statute of limitations. First, he contends that his causes of action accrued on December 19, 2010, when he was arrested for violating parole. Second, he argues that his

causes of action could not possibly have accrued prior to October 30, 2009, because his "injury," for purposes of his unlawful incarceration claims, could only have accrued after the term of his parole expired. Third, Beckstrand argues that he is entitled to equitable tolling based on his "sincere belief" that his sentence expired on October 30, 2009.

Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis for the claim. Cabrera, 159 F.3d at 379. The accrual of a § 1983 claim depends on the substantive basis of the claim. Id. at 380.

In Counts I and II, Beckstrand alleges that his Eighth and Fourteenth Amendment rights were violated when Defendants wrongfully refused to credit him for his federal sentence in accordance with the Judgment and Stipulation Order. Compl. ¶¶ 47-58. The substantive basis for these claims is Defendants' alleged miscalculation of his sentence. Beckstrand knew in 2008 that this had occurred. Defendants explained to Beckstrand in 2008 that he was not eligible for the credit that he claimed.

Beckstrand responds that, although he knew of the DPS calculation in 2008, he was not injured by that calculation in 2008. This court disagrees. Beckstrand had an injury that gave him standing to seek redress in 2008. He could, for example,

have sought a writ of mandamus requiring Defendants to comply with Judge Strance's order.

This court distinguishes an injury for standing purposes from an injury giving rise to damages.  That is, even if Beckstrand could not have sustained a damage claim in 2008, he had standing to seek injunctive relief then.

The law in the Ninth Circuit is that a claimant may have an injury-in-fact for standing purposes if there is "the possibility of future injury."  Krotter v. Starbucks Corp., 628 F.3d 1139, 1142 (9th Cir. 2010) (quoting Cent. Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2010)).  The Ninth Circuit has held that the threat of future harm is sufficient if the threat is "credible" and "both real and immediate, not conjectural or hypothetical."  Id. (holding that the plaintiffs adequately pled an injury-in-fact by alleging that they had an increased risk of future identity theft stemming from the theft of a laptop containing their unencrypted personal data) (quoting Cent. Delta Water, 306 F.3d at 947, and City of L.A. v. Lyons, 461 U.S. 95, 102 (1983)); Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 656 (9th Cir. 2002).

Citing United States Supreme Court cases on the issue, the Second Circuit has held, "an injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of

sustaining a valid cause of action under applicable tort law.
An injury-in-fact may simply be the fear or anxiety of future
harm." Denney v. Deutsche Bank AG, 443 F.3d 253, 263-64 (2d
Cir. 2006). The Second Circuit explained:

> For example, exposure to toxic or harmful
> substances has been held sufficient to
> satisfy the Article III injury-in-fact
> requirement even without physical symptoms
> of injury caused by the exposure, and even
> though exposure alone may not provide
> sufficient ground for a claim under state
> tort law. See [Whitmore v. Arkansas, 495
> U.S. 149, 155 (1990)] ("Our threshold
> inquiry into standing 'in no way depends on
> the merits of the [plaintiff's claim.]'")
> (quoting [Warth v. Seldin, 422 U.S. 490, 500
> (1975)]); In re Agent Orange Prod. Liab.
> Litig. (Ivy v. Diamond Shamrock Chems. Co.),
> 996 F.2d 1425, 1434 (2d Cir. 1993)
> (rejecting argument that "injury in fact
> means injury that is manifest, diagnosable
> or compensable") (internal quotation marks
> omitted), overruled in part on other grounds
> by Syngenta Crop Prot., Inc. v. Henson, 537
> U.S. 28, 123 S. Ct. 336, 154 L. Ed. 2d 368
> (2002); Wright, Miller & Kane, supra, §
> 1785.1 ("[T]his requisite of an injury is
> not applied too restrictively.  If plaintiff
> can show that there is a possibility that
> defendant's conduct may have a future
> effect, even if injury has not yet occurred,
> the court may hold that standing has been
> satisfied."). The risk of future harm may
> also entail economic costs, such as medical
> monitoring and preventative steps; but
> aesthetic, emotional or psychological harms
> also suffice for standing purposes. See
> Ass'n of Data Processing Serv. Orgs., Inc.
> v. Camp, 397 U.S. 150, 154, 90 S. Ct. 827,
> 25 L. Ed. 2d 184 (1970). Moreover, the fact
> that an injury may be outweighed by other

> benefits, while often sufficient to defeat a
> claim for damages, does not negate standing.
> See Sutton v. St. Jude Med. S.C., Inc., 419
> F.3d 568, 574-75 (holding that the increased
> risk that a faulty medical device may
> malfunction constituted a sufficient injury-
> in-fact even though the class members' own
> devices had not malfunctioned and may have
> actually been beneficial).

Id.

Beckstrand could have alleged in 2008 that his rights would be violated by being required to comply with parole conditions after his indeterminate five-year term had expired. An allegation that he was already being so required would have constituted a present injury, but a present injury was not required. In 2008, he could have anticipated a threat of injury that would have been credible for Article III standing purposes. With respect to the requirement that the threat of injury also be "real and immediate, not conjectural or hypothetical," he could have noted that authority to calculate the end of his sentence was vested by statute in DPS, and that his parole term was supposed to end in October 2009. Indeed, it might have taken from 2008 until October 2009 for him to prevail in court, so an action filed in 2008 would not have been premature.

The court does not read the requirement that the threat be "real and immediate" as requiring proof of an injury about to occur in a matter of days. For purposes of the present

discussion, the court concludes that Beckstrand's injury was sufficiently "real and immediate, not conjectural or hypothetical" before 2009. Counts I and II are barred by the two-year statute of limitations.

Another way to view the situation is to say that Counts I and II were ripe before 2009. The Ninth Circuit has explained that "[t]he constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." Wolfson v. Brammer, 616 F.3d 1045, 1058 (9th Cir. 2010) (citing Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138-39 (9th Cir. 1999), and United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." Id. (citations omitted).

Even if his limitations period began to run in 2008, Beckstrand says the period should be equitably tolled. As with the applicable statute of limitations period, state law governs whether a plaintiff is entitled to equitable tolling. Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993). Under Hawaii law, a plaintiff seeking equitable tolling of his claims must demonstrate "(1) that he has been pursuing his right diligently, and (2) that some extraordinary circumstance stood

in his way."  Office of Hawaiian Affairs v. Hawaii, 110 Haw.
338, 360, 133 P.3d 767, 789 (2006).  "Extraordinary
circumstances" are circumstances beyond the control of the
complainant that make it impossible to file a complaint within
the statute of limitations.  Id. (citation omitted).

      Beckstrand does not meet the "extraordinary
circumstances" threshold.  He argues, in his Memorandum in
Opposition, that he "sincerely believed that he was entitled to
rely on the State Sentence handed down by the Hawaii Circuit
Court which *ordered* that Plaintiff receive such credit."
Notwithstanding this belief, the record shows that Beckstrand
knew in 2008 that DPS would not honor the credit he claimed.
First, DPS' calculation of Beckstrand's sentence was
memorialized in the Parole Order, which Beckstrand signed when
he was released from prison in 2008.  Second, Beckstrand's
parole officer informed him that he "had him until 2012."
Third, Defendants allegedly informed Beckstrand over the
telephone that he was not entitled to the credit he claimed.

      Beckstrand does not show that filing a complaint
against Defendants within the two-year statute of limitations
period was beyond his control or impossible.  In other words,
Beckstrand fails to show that an extraordinary circumstance
stood in the way of the timely filing his claims.  Therefore,

29

Beckstrand is not entitled to equitable tolling.

That is not, however, the end of the limitations issue. Count III is distinguishable from Counts I and II. In Count III, Beckstrand alleges a violation of his Fourth Amendment rights resulting from his purportedly unlawful incarceration. His injury, therefore, is the seventy-three-day incarceration following his alleged parole violation. He sustained this injury when he was arrested in December 2010 for an alleged 2009 parole violation; he did not know or have reason to know of this injury in 2008.

In 2008, Beckstrand was on parole, and could have lawfully faced incarceration for violating parole. Unlike the plaintiffs in RK Ventures, he simply could not have brought his § 1983 claim for unlawful incarceration merely upon learning, from Defendants, that the Judgment and Stipulated Order were inapplicable. Beckstrand's cause of action on Count III accrued when he was arrested in December 2010, within the two-year statute of limitations period.

Defendants contend that, like Counts I and II, Count III is time-barred because Beckstrand's incarceration beginning in 2010 resulted from Defendants' alleged refusal to follow the Judgment and Stipulated Order. While the incarceration flowed from that alleged refusal, it does not follow that the

limitations period on Count III began to run from the time of
the refusal.  Incarceration was not the kind of injury that was
a given.  Even if Beckstrand knowingly violated a parole
condition, it cannot be said that every parole violation
necessarily results in incarceration.  Because incarceration was
not an inevitable result of Defendants' alleged action, the
limitation period for Count III ran from the time of the
incarceration, not from the alleged act that ultimately caused
the incarceration.  In 2008, Beckstrand did not have a threat of
incarceration that was "both real and immediate, not conjectural
or hypothetical."  <u>Krotter</u>, 628 F.3d at 1142.

In sum, Counts I and II, alleging that Defendants
wrongfully miscalculated Beckstrand's sentence in violation of
the Eighth and Fourteenth Amendments, are barred by the two-year
statute of limitations period.  Count III, alleging that
Defendants caused Beckstrand's unlawful incarceration in
violation of his Fourth Amendment rights, is brought within the
two-year statute of limitations.

**V.  CONCLUSION.**

The court GRANTS the Motion in part.  The Court grants summary judgment on Counts I and II to Defendants on limitations grounds.  In all other respects, the Motion is DENIED.

This order leaves Count III for further adjudication.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 26, 2012.


 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


Beckstrand v. Read et al., Civ. No. 11-00597 SOM/BMK; Order Granting in Part, Denying in Part Defendants Thomas Read and Nettie Simmons's Motion for Summary Judgment.